## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICAN OVERSIGHT,<br>1030 15th Street NW, B255<br>Washington, DC 20005<br><br>*Plaintiff,*<br><br>v.<br><br>U.S. DEPARTMENT<br>OF HOMELAND SECURITY,<br>245 Murray Lane SW<br>Washington, DC 20528<br><br>and<br><br>U.S. IMMIGRATION AND CUSTOMS<br>ENFORCEMENT,<br>500 12th Street SW<br>Washington, DC 20536,<br><br>*Defendants.* | Case No. 25-cv-1811 |

## <u>COMPLAINT</u>

1.      American Oversight brings this action following President Trump's deployment of 2,000 National Guard troops to Los Angeles—against the express wishes of local and state government officials who noted that the move had exacerbated tensions rather than make the city safer—after protests that broke out across the city in response to raids conducted by federal Immigration and Customs Enforcement (ICE) agents in service of the administration's wide-reaching mass deportation goals.[1]

---

[1] *See, e.g.*, *What to Know About the Los Angeles Immigration Protests over ICE Operations*, CBS News (updated June 10, 2025, 5:15 AM), https://www.cbsnews.com/news/california-los-angeles-immigration-protests-trump; Sam Levin & Edward Helmore, *LA Protests: Trump Sends*

2.      President Trump's deployment of federalized members of the National Guard to Los Angeles—the first time a president has sent federal troops to address civil unrest without the cooperation of state government since 1965[2]—coincided with a wide-reaching memorandum he issued on June 7, 2025 "authorizing" the deployment. The memorandum purportedly relies on 10 U.S.C. § 12406, which permits the president to call federalized troops into service in situations of invasion or rebellion or where regular forces are insufficient to execute the law.[3]

3.      The deployment and memorandum have sparked widespread attention, with commentators questioning the legality of the deployment, raising questions of whether it violates the Posse Comitatus Act, which prohibits active-duty military from conducting law enforcement activities unless expressly authorized by other law.[4] The Posse Comitatus Act, born out of the founders' fears of a tyrannical president misusing the U.S. military, reflects the deep-rooted American tradition of reserving law enforcement to the states.[5]

4.      It furthermore mirrors the concept of federalism, enshrined in the Tenth Amendment to the U.S. Constitution, which protects state sovereignty with respect to all powers not expressly granted to the federal government or expressly withheld from the states.[6]

_____

*Thousands More Troops in 'Authoritarian' Move*, The Guardian (June 10, 2025, 6:21 PM), https://www.theguardian.com/us-news/2025/jun/09/los-angeles-protests.

[2] Jeremy W. Peters, *Here is What Happened When President Johnson Bypassed a Governor to Deploy the National Guard,* N.Y. Times, June 8, 2025, https://www.nytimes.com/2025/06/08/us/lbj-national-guard-alabama-1965.html.

[3] *See* Department of Defense Security for the Protection of Department of Homeland Security Functions, June 7, 2025, https://www.whitehouse.gov/presidential-actions/2025/06/department-of-defense-security-for-the-protection-of-department-of-homeland-security-functions/.

[4] *See, e.g.*, Rachel E. VanLandingham, *Trump's Unprecedented Militarization in L.A. is Making Things Worse*, MSNBC (June 9, 2025, 6:00 PM), https://www.msnbc.com/opinion/msnbc-opinion/trump-los-angeles-ice-protests-military-national-guard-rcna211931.

[5] *Id.*; *see also* 18 U.S.C. § 1385.

[6] U.S. Const. amend. X ("The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people.").

5.       On June 9, 2025, Governor Newsom sued President Trump, Secretary of Defense Pete Hegseth, and the Department of Defense, arguing that the administration "unlawfully bypassed" him in deploying the troops without his permission.[7] Pointing out that the recent protests have been largely peaceful, that they do not rise "to the level of protests or riots that Los Angeles and other major cities have seen at points in the past, including in recent years," and moreover, that the administration did not in the June 7, 2025 memorandum—and cannot in fact—identify a rebellion or invasion warranting the invocation of Section 12406.[8] Thus, California argues, the administration's actions violate both Section 12406 and the Tenth Amendment.[9]

6.       Notably, the June 7, 2025 memorandum does not speak to circumstances in Los Angeles specifically but employs broad language that President Trump may rely on in the future to justify the presence of federalized troops in virtually any situation where there is even minimal resistance to actions by ICE or other federal actions.[10]

7.       Indeed, given the calls within the so-called Project 2025 for increased federal military authority,[11] Trump's deployment of National Guard troops to Los Angeles would seem to be an opening salvo in a coordinated national strategy and not simply an isolated incident.

---

[7] Graham Kates & Joe Walsh, *California Sues Trump Administration for Deploying National Guard to Los Angeles: "Unprecedented Power Grab,"* CBS News (updated June 9, 2025, 11:16 PM), https://www.cbsnews.com/news/trump-national-guard-california-lawsuit-gavin-newsom/.

[8] *See* Compl. ¶¶ 29–30, 89, ECF No. 1, *Newsom v. Trump, et al.*, Case No. 3:25-cv-04870 (N.D. Cal. filed June 9, 2024), available at https://storage.courtlistener.com/recap/gov.uscourts.cand.450934/gov.uscourts.cand.450934.1.0.pdf.

[9] *Id.* ¶¶ 79–101.

[10] *See supra* note 3.

[11] Melissa Quinn, *How Trump's Policies and Project 2025 Proposals Match up After First 100 Days*, CBS News (Apr. 29, 2025, 10:09 AM), https://www.cbsnews.com/news/trump-project-2025-first-100-days/.

8.    President Trump's authority to justify the deployment of federalized troops under these circumstances is unclear, as is the potential breadth of future circumstances under which the administration may cite the exceptionally wide-reaching June 7, 2025 memorandum in an effort to justify those extraordinary actions.

9.    In April, Plaintiff American Oversight submitted requests for records under the Freedom of Information Act (FOIA) from executive branch agencies pertaining to President Trump's mass deportation agenda and potential authorities his administration would invoke to authorize federalizing law enforcement.

10.    Having received no records in response, American Oversight now brings this action against two federal agencies under FOIA, 5 U.S.C. § 552, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, seeking declaratory and injunctive relief to compel compliance with the requirements of FOIA.

## JURISDICTION AND VENUE

11.    This Court has jurisdiction over this action pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. §§ 1331, 2201, and 2202.

12.    Venue is proper in this district pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1391(e).

13.    Because Defendants have failed to comply with the applicable time-limit provisions of FOIA, American Oversight is deemed to have exhausted its administrative remedies pursuant to 5 U.S.C. § 552(a)(6)(C)(i) and is now entitled to judicial action enjoining Defendants from continuing to withhold agency records and ordering the production of agency records improperly withheld.

## PARTIES

14.    Plaintiff American Oversight is a nonpartisan, non-profit section 501(c)(3) organization primarily engaged in disseminating information to the public. American Oversight is committed to the promotion of transparency in government, the education of the public about government activities, and ensuring the accountability of government officials. Through research and requests for public records under FOIA, American Oversight uses the information it gathers, and its analysis of it, to educate the public about the activities and operations of the federal government through reports, published analyses, press releases, and other media. The organization is incorporated under the laws of the District of Columbia.

15.    Defendant U.S. Department of Homeland Security (DHS) is a department of the executive branch of the U.S. government headquartered in Washington, DC, and an agency of the federal government within the meaning of 5 U.S.C. § 552(f)(1). DHS has possession, custody, and control of records that American Oversight seeks.

16.    Defendant U.S. Immigration and Customs Enforcement (ICE) is a component of DHS, which is a department of the executive branch of the U.S. government, and an agency of the federal government within the meaning of 5 U.S.C. § 552(f)(1). ICE is headquartered in Washington, DC. ICE has possession, custody, and control of records that American Oversight seeks.

## STATEMENT OF FACTS

17.    On April 10, 2025, American Oversight submitted FOIA requests to DHS and ICE regarding President Trump's executive order declaring a national emergency at the southern border of the United States and deployment of troops to the border.

*DHS Military Immigration Enforcement FOIA*

18.     On April 10, 2025, American Oversight submitted a FOIA request to DHS

(internal tracking number DHS-25-1055) seeking the following records:

1.  All email communications (including emails, email attachments,
    complete email chains, calendar invitations, and calendar
    invitation attachments) <u>sent by</u> any of the Department of
    Homeland Security (DHS) officials listed below, <u>and</u> containing
    any of the key terms listed below.

    <u>Department of Homeland Security Officials</u>:
    i.      Kristi Noem, Secretary
    ii.     Troy Edgar, Deputy Secretary
    iii.    Juliana Blackwell, Acting Executive Secretary
    iv.     Rob Law, Senior Advisor
    v.      Tony Pham, Senior Advisor
    vi.     Philip Hegseth Senior Advisor
    vii.    MaryAnn Tierney, Former Acting Deputy Secretary
    viii.   Anyone serving as Deputy Secretary
    ix.     Anyone serving as Under Secretary of Management
    x.      Anyone serving as Chief of Staff

    <u>Key Terms</u>:
    a.  "buffer zone"
    b.  "Posse Comitatus"
    c.  "Insurrection Act"
    d.  Stryker

    In an effort to accommodate your office and reduce the number
    of potentially responsive records to be processed and produced,
    American Oversight has limited part 1 of this request to emails
    <u>sent</u> by the specified individuals. To be clear, however,
    American Oversight still requests that complete email chains be
    produced, displaying both sent and received messages. This
    means that both an individual's response to an email and the
    initial received message are responsive to this request and
    should be produced.

2.  All email communications (including emails, email attachments,
    complete email chains, calendar invitations, and calendar
    invitation attachments) <u>between</u> any of the Department of
    Homeland Security (DHS) officials listed below, and/or anyone
    communicating on their behalf, such as an assistant, secretary,

and/or chief of staff, <u>and</u> (b) any of the external entities listed below (including the listed domains).

<u>External Entities</u>:
a. Classic Air Charter (classicaircharters.com, classicaircharter.com, codeseven.us)
b. World Atlantic Airlines (worldatlanticair.com)
c. Air Transport Services Group (atsginc.com)
d. CSI Aviation (csiaviation.com)
e. GlobalX (globalxair.com)

3. A complete copy (including any attachments) of all contracts or subcontracts, amendments, memoranda of understanding, or other written agreements between DHS and the Department of Defense and/or U.S. North Command regarding the use of military bases as immigration detention facilities.

4. A complete copy (including any attachments) of all contracts or subcontracts, amendments, memoranda of understanding, or other written agreements between DHS and the Department of Defense and/or U.S. North Command regarding the use of military aircraft for deportation or repatriation flights.

5. All formal or informal directives (including informal email communications), guidance, protocol, or policies from the White House regarding compliance with or implementation of the Proclamation "Declaring a National Emergency at the Southern Border of the United States."

6. All formal or informal directives (including informal email communications), guidance, protocol, or policies from the White House regarding compliance with or implementation of the Executive Order "Clarifying the Military's Role in Protecting the Territorial Integrity of the United States."

7. All formal or informal directives (including informal email communications), guidance, protocol, or policies created by, issued to, or otherwise in the custody of DHS regarding military deployment to the southern border for immigration enforcement purposes, including, but not limited to, the military's use of force or weapons against migrants and collaboration between DHS officials and military or service members.

8. All formal or informal directives (including informal email communications), guidance, protocol, or policies created by,

issued to, or otherwise in the custody of DHS regarding use of military bases as immigration detention facilities.

9. Records reflecting any training materials given to active-duty military or service members deployed to the southern border regarding immigration enforcement operations, including, but not limited to, compliance with the Proclamation "Declaring a National Emergency at the Southern Border of the United States" and the Executive Order "Clarifying the Military's Role in Protecting the Territorial Integrity of the United States."

Responsive records may include, but should not be limited to, informational handouts, summary documents, handwritten or typed notes, training videos, PowerPoint slides, or any other records used in trainings.

19.     The request sought records from January 20, 2025, through the date the search is conducted.

20.     On April 14, 2025, DHS acknowledged receipt of the request, assigned the request tracking number 2025-HQFO-03630, and stated that DHS would invoke a 10-day extension for the request.

21.     American Oversight has received no further communication from DHS regarding its FOIA request.

*ICE Military Immigration Enforcement FOIA*

22.     On April 10, 2025, American Oversight submitted a FOIA request to ICE (internal tracking number DHS-ICE-25-1056) seeking the following records:

1. All email communications (including emails, email attachments, complete email chains, calendar invitations, and calendar invitation attachments) <u>sent by</u> any of the Immigration and Customs Enforcement (ICE) officials listed below, <u>and</u> containing any of the key terms listed below.

<u>Immigration and Customs Enforcement Officials</u>:
i.      Todd Lyons, Acting Director
ii.     Madison Sheahan, Deputy Director
iii.    Caleb Vitello, former Acting Director

| | |
|---|---|
| iv. | Kenneth Genalo, Acting Executive Associate Director, Enforcement and Removal Operations ("ERO") |
| v. | Russell Hott, former Acting Executive Associate Director, ERO |
| vi. | Jon Feere, Chief of Staff |
| vii. | Garrett Ripa, Deputy Executive Associate Director, ERO |
| viii. | Peter Berg, former Deputy Executive Associate Director, ERO |
| ix. | Robert Cerna, Acting Field Office Director, ERO |
| x. | Michael Vergara, Field Office Director, ERO |
| xi. | Mary De Anda-Ybarra, Field Office Director, ERO |
| xii. | Anyone serving as Deputy Executive Associate Director, ERO |
| xiii. | Anyone serving as Phoenix Field Office Director, ERO |

Key Terms:
a. "buffer zone"
b. "Posse Comitatus"
c. "Insurrection Act"
d. Stryker

In an effort to accommodate your office and reduce the number of potentially responsive records to be processed and produced, American Oversight has limited part 1 of this request to emails sent by the specified individuals. To be clear, however, American Oversight still requests that complete email chains be produced, displaying both sent and received messages. This means that both an individual's response to an email and the initial received message are responsive to this request and should be produced.

2. All email communications (including emails, email attachments, complete email chains, calendar invitations, and calendar invitation attachments) between any of the Immigration and Customs Enforcement (ICE) officials listed below, and/or anyone communicating on their behalf, such as an assistant, secretary, and/or chief of staff, and (b) any of the external entities listed below (including the listed domains).

External Entities:
a. Classic Air Charter (classicaircharters.com, classicaircharter.com, codeseven.us)
b. World Atlantic Airlines (worldatlanticair.com)
c. Air Transport Services Group (atsginc.com)
d. CSI Aviation (csiaviation.com)

e.   GlobalX (globalxair.com)

3.  A complete copy (including any attachments) of all contracts or subcontracts, amendments, memoranda of understanding, or other written agreements between ICE and the Department of Defense and/or U.S. North Command regarding the use of military bases as immigration detention facilities.

4.  A complete copy (including any attachments) of all contracts or subcontracts, amendments, memoranda of understanding, or other written agreements between ICE and the Department of Defense and/or U.S. North Command regarding the use of military aircraft for deportation or repatriation flights.

5.  All formal or informal directives (including informal email communications), guidance, protocol, or policies from the White House regarding compliance with or implementation of the Proclamation "Declaring a National Emergency at the Southern Border of the United States."

6.  All formal or informal directives (including informal email communications), guidance, protocol, or policies from the White House regarding compliance with or implementation of the Executive Order "Clarifying the Military's Role in Protecting the Territorial Integrity of the United States."

7.  All formal or informal directives (including informal email communications), guidance, protocol, or policies created by, issued to, or otherwise in the custody of ICE regarding military deployment to the southern border for immigration enforcement purposes, including, but not limited to, the military's use of force or weapons against migrants and collaboration between ICE officials and military or service members.

8.  All formal or informal directives (including informal email communications), guidance, protocol, or policies created by, issued to, or otherwise in the custody of ICE regarding use of military bases as immigration detention facilities.

9.  Records reflecting any training materials given to active-duty military or service members deployed to the southern border regarding immigration enforcement operations, including, but not limited to, compliance with the Proclamation "Declaring a National Emergency at the Southern Border of the United States" and the Executive Order "Clarifying the Military's Role in Protecting the Territorial Integrity of the United States."

> Responsive records may include, but should not be limited to, informational handouts, summary documents, handwritten or typed notes, training videos, PowerPoint slides, or any other records used in trainings.

23.    The request sought records from January 20, 2025, through the date the search is conducted.

24.    On April 16, 2025, ICE acknowledged receipt of the request, assigned the request tracking number 2025-ICFO-31329, and stated that ICE would invoke a 10-day extension for the request.

25.    American Oversight has received no further communication from ICE regarding its FOIA request.

*Exhaustion of Administrative Remedies*

26.    As of the date of this Complaint, Defendants have failed to either (a) notify American Oversight of any determination regarding its FOIA requests, including the scope of any responsive records the agency intends to produce or withhold and the reasons for any withholdings; or (b) produce the requested records or demonstrate that the requested records are lawfully exempt from production.

27.    Through Defendants' failure to respond to American Oversight's FOIA requests within the time period required by law, American Oversight has exhausted its administrative remedies and now seeks immediate judicial review.

**COUNT I**
**Violation of FOIA, 5 U.S.C. § 552**
**Failure to Conduct Adequate Searches for Responsive Records**

28.    American Oversight repeats the allegations in the foregoing paragraphs and incorporates them as though fully set forth herein.

29.     American Oversight properly requested records within the possession, custody, and control of Defendants.

30.     Defendants are agencies subject to and within the meaning of FOIA, and they must therefore make reasonable efforts to search for requested records.

31.     Defendants have failed to promptly and adequately search for records responsive to American Oversight's FOIA requests.

32.     Defendants' failures to conduct adequate searches for responsive records violate FOIA.

33.     Plaintiff American Oversight is therefore entitled to injunctive and declaratory relief requiring Defendants to promptly make reasonable efforts to search for records responsive to American Oversight's FOIA requests.

### COUNT II
### Violation of FOIA, 5 U.S.C. § 552
### Wrongful Withholding of Non-Exempt Responsive Records

34.     American Oversight repeats the allegations in the foregoing paragraphs and incorporates them as though fully set forth herein.

35.     American Oversight properly requested records within the possession, custody, and control of Defendants.

36.     Defendants are wrongfully withholding non-exempt agency records requested by American Oversight by failing to produce non-exempt records responsive to its FOIA requests.

37.     Defendants are wrongfully withholding non-exempt agency records requested by American Oversight by failing to segregate exempt information in otherwise non-exempt records responsive to American Oversight's FOIA requests.

38.     Defendants' failure to provide all non-exempt responsive records violates FOIA.

39.     Plaintiff American Oversight is therefore entitled to declaratory and injunctive relief requiring Defendants to promptly produce all non-exempt records responsive to its FOIA requests and provide indexes justifying the withholding of any responsive records withheld under claim of exemption.

## **REQUESTED RELIEF**

WHEREFORE, American Oversight respectfully requests the Court to:

(1) Order Defendants to conduct a search or searches reasonably calculated to uncover all records responsive to American Oversight's FOIA requests;

(2) Order Defendants to produce, within 20 days of the Court's order, or by such other date as the Court deems appropriate, any and all non-exempt records responsive to American Oversight's FOIA requests with indexes justifying the withholding of any responsive records withheld under claim of exemption;

(3) Enjoin Defendants from continuing to withhold any and all non-exempt records responsive to American Oversight's FOIA requests;

(4) Award American Oversight the costs of this proceeding, including reasonable attorneys' fees and other litigation costs reasonably incurred in this action, pursuant to 5 U.S.C. § 552(a)(4)(E); and

(5) Grant American Oversight such other relief as the Court deems just and proper.

Dated:  June 10, 2025                    Respectfully submitted,

                                        */s/ Emma Lewis*
                                        Emma Lewis
                                        D.C. Bar No. 144574
                                        Loree Stark
                                        D.C. Bar No. 90021926
                                        AMERICAN OVERSIGHT

1030 15th Street NW, B255
Washington, DC 20005
(202) 919-6303
emma.lewis@americanoversight.org
*Counsel for Plaintiff*